UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                   :

MARIE FLAHERTY,                         :

                             Plaintiff,    :

                                                 :         22 Civ. 2642 (LGS)

              -against-                 :

                                                 :         **OPINION AND ORDER**

LINDSEY S. DIXON, et al.,               :

                               Defendants. :

------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Marie Flaherty brought this action in New York County Supreme Court against Defendant Lindsey S. Dixon and several "John Doe" Defendants for defamation, tortious interference with contract, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). Dixon timely removed the case to this Court. Defendant moves to dismiss the First Amended Complaint ("FAC"), the operative complaint. Plaintiff opposes dismissal and seeks leave to file a proposed second amended complaint ("PSAC") adding Defendants Amazon.com, Inc. ("Amazon"), Prime Now LLC, Whole Foods Markets Services, Inc. ("WFM"), Jennifer Hutt, Davy Cumberland, and several additional Doe Defendants, and adding claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), New York Labor Law § 740 ("NYLL § 740"), and claims for negligent supervision, negligent hiring and breach of the implied covenant of good faith and fair dealing. For the reasons below, Defendant's motion to dismiss is granted, and Plaintiff's motion for leave to amend is granted in part and denied in part.

## I.   BACKGROUND

### A.   Plaintiff's First Amended Complaint

The following facts are taken from the FAC and assumed to be true for purposes of this motion.  *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).  Plaintiff is a licensed attorney in Massachusetts.  From March 27 to May 15, 2020, Plaintiff was employed by Amazon as a "Seasonal Amazon Shopper."  Plaintiff's job was to complete shopping orders for customers who ordered food and other products online from two WFM locations in Manhattan. Defendant Dixon was Plaintiff's manager, and the Doe Defendants are other individuals or entities associated with Amazon.

Plaintiff worked for Amazon at a time when the COVID-19 pandemic affected New York City particularly severely.  Plaintiff diligently complied with safety protocols, including social distancing and personal protective equipment ("PPE") rules.  Defendants did not comply with or enforce COVID-19 safety protocols in the workplace, and they mocked, harassed and retaliated against employees who raised concerns about COVID-19.  Amazon routinely notified its employees when coworkers were diagnosed with COVID-19 but did not notify customers.  Plaintiff raised concerns about this practice. On April 26, 2020, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint regarding the conditions of her employment at Amazon and Defendants' failure to follow COVID-19 protocols and to notify customers when employees were infected with COVID-19.  Dixon failed to respond adequately to the ensuing EEOC investigation.

On May 6, 2020, Dixon sent Plaintiff an email stating:  "On 4/26/20, you were found to have participated in harassing/discriminatory behavior.  Specifically, you

admitted to the STL on site that you called WFM employees racist and stated that all of the 'colored people' in the store are racist."  The email also notified Plaintiff that her employment would end, "effective immediately."  Plaintiff did not call any "WFM employees racist," did not "admit" that she did so, did not say "that all of the 'colored people' in the store are racist," would not use the term "colored" in that context and did not participate in any harassing or discriminatory behavior.  Plaintiff denied the allegations in the email and asked Dixon to identify the "STL" and the "WFM employees" referenced in the email, but Dixon has not done so.  Dixon avoided speaking with Plaintiff about the allegations and has refused to retract the statements in the email or reinstate Plaintiff's employment.  Dixon forwarded the email quoted above to other Amazon employees in April and May 2020, and repeated the statements contained therein during the EEOC investigation.

Dixon lacked authority to fire Plaintiff, but after she sent the email above to Plaintiff, Dixon told Plaintiff not to show up for scheduled shifts.  On May 13, 2020, Plaintiff received notice from Amazon that she was being fired effective May 15, 2020, for missing her shifts.

### B.    Plaintiff's Proposed Second Amended Complaint

The following facts are taken from Plaintiff's PSAC and assumed to be true for purposes of this motion, since Defendant opposes Plaintiff's motion on the ground that amendment would be futile.  *See Francis*, 992 F.3d at 72.  The PSAC includes most of the allegations in the FAC, and only allegations that are new in the PSAC are recited below.

At the time Plaintiff was hired by Amazon, the company did not conduct background checks or drug tests on most employees, nor did it conduct training on COVID-19.  Supervisors

from Amazon and WFM did not enforce COVID-19 safety measures, and many Amazon and WFM employees did not comply with such measures. Amazon was accused by the New York Attorney General of retaliating against employees who raised concerns over working conditions during the COVID-19 pandemic.

Plaintiff was often the only white person or one of two white people working as an Amazon Shopper, and Plaintiff asserts that she was treated less well than her coworkers who were people of color. On one occasion, an unnamed coworker began speaking to Plaintiff in Gaelic and told Plaintiff she assumed Plaintiff was Irish and therefore might speak Gaelic. During "New Hire Orientation," Plaintiff was instructed to ask WFM employees for assistance if she was unable to find an item requested by a customer, but Plaintiff claims that coworkers refused to help her on several occasions. Plaintiff asserts that on some unspecified occasions various Doe Defendants told her falsely that products were unavailable, and that those same Doe Defendants would immediately check the stock when asked by Plaintiff's coworkers of color. Another Doe Defendant asked Plaintiff to speak louder when she approached the deli counter, apparently because Plaintiff wore two masks and a face shield to protect herself from COVID-19. That same Doe Defendant gave Plaintiff different, inferior products instead of those Plaintiff requested. Plaintiff also alleges that she was treated less well because of the measures she took to protect herself from COVID-19, and that her coworkers engaged in various behaviors that risked increasing the spread of COVID-19 and harmed customers. Plaintiff did not observe her coworkers of color being subjected to any of the conditions described above.

When Plaintiff complained to a manager about WFM employees' hostility, the manager informed her that WFM employees' treatment of Amazon Shoppers was a chronic problem. A "Regular Amazon Shopper" -- as opposed to a "Seasonal Amazon Shopper" like Plaintiff --

failed to train Plaintiff adequately on certain aspects of the job and complained about Seasonal Amazon Shoppers taking shifts.  Some Regular Amazon Shoppers attempted to "help" Plaintiff with her orders but made errors that reduced Plaintiff's productivity.

On April 26, 2020, after a WFM employee refused to help Plaintiff fill an order, Plaintiff complained about her employment conditions to a supervisor, Davy Cumberland.  Plaintiff complained about what she perceived as WFM employees' racially motivated refusal to help her and refusal to comply with COVID-19 safety measures.  Cumberland asked her if she was OK and suggested that she should be sent home.  Plaintiff stated that she was particularly concerned about COVID-19 because she had undergone open-heart surgery.  Plaintiff asked if she should call the police to report violations of COVID-19 policies, and Cumberland agreed that she should.  Plaintiff left her phone in the room where she had been speaking with the supervisor, and Cumberland refused to return it.

On May 1, 2020, another Doe Defendant initially refused to help Plaintiff fill an order at the meat counter, then became angry and threw a piece of meat at the wall.  After that incident, Plaintiff complained about perceived racial harassment to two more supervisors.  One supervisor suggested that he would not preserve video of the incident absent a subpoena.  Defendants never followed up on any of Plaintiff's complaints.

Defendant Dixon's email to Plaintiff, discussed above, was preceded by an email from Cumberland to Dixon on April 26, 2020, in which Cumberland said that Plaintiff had accused coworkers of being racist and threatened to call the police on those who failed to comply with COVID-19 safety measures.  Cumberland wrote that Plaintiff "seemed a little off as if she was hyper or on a drug."  Cumberland told Dixon, "Marie admitted to me that she called them racists on the sales floor and also let me know all the 'colored people' in our store is racists."  Prior to

Cumberland sending this email, he was aware that Plaintiff had made a complaint about his behavior by calling Amazon's Human Resources Emergency Line.

## II.     DISCUSSION

### A.     Defendant's Motion to Dismiss the FAC

#### 1.   Legal Standard for a Motion to Dismiss

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 716 (2d Cir. 2022).  It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).  While courts generally afford pro se litigants "special solicitude," courts "do[] not give special solicitude to pro se litigants who are themselves attorneys." *Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021).

### 2. Statute of Limitations

Plaintiff's claims are not barred by the statute of limitations.  The claims accrued in May 2020 during the COVID-19 statutory tolling period described below.  Their statutes of limitations began to run on November 4, 2020.  The claims were first filed in state court on November 4, 2021.  Plaintiff's defamation and IIED claims have a one-year statute of limitations, and Plaintiff's tortious interference and NIED claims have a three-year limitations period.  Accordingly, all of the claims are timely.

Prior to the accrual of Plaintiff's claims, on March 20, 2020, New York Governor Andrew Cuomo issued Executive Order 202.8, which stated, "any specific time limit for the commencement, filing, or service of any legal action . . . is hereby tolled from the date of this executive order until April 19, 2020."  9 N.Y.C.R.R. § 8.202.8.  Governor Cuomo issued nine subsequent orders extending the period during which time limits were "tolled" until November 3, 2020.  9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72.  Dixon argues that Governor Cuomo's executive orders "suspended" but did not "toll" statutes of limitations.  If statutes of limitations were only suspended, limitations periods that would have expired during the tolling period expired instead on November 4, 2020, and limitations periods that would have expired after November 4, 2020, would be unaffected by the executive orders.  In the alternative, Dixon argues that Plaintiff's defamation and IIED claims are untimely because Plaintiff filed her original complaint in state court on November 4, 2021, not November 3.  Neither argument is persuasive.

While several New York trial courts initially found that Governor Cuomo's orders "suspended" rather than "tolled" statutes of limitations, New York's intermediate appellate courts that have addressed the issue agree that limitations periods were "tolled," i.e., extended by

the length of the tolling period.  *See Murphy v. Harris*, No. 2021-02991, 2022 WL 16556686, at *1-2 (1st Dep't Nov. 1, 2022); *Roach v. Cornell Univ.*, 172 N.Y.S.3d 215, 218 (3d Dep't 2022); *Brash v. Richards*, 149 N.Y.S.3d 560, 585 (2d Dep't 2021).  While the language of the executive orders is not perfectly consistent, most use the language of "tolling" rather than "suspension."  It is likely that the New York Court of Appeals would agree with the view of the intermediate appellate courts if presented with the issue.  *See Dunnegan v. 220 E. 54th St. Owners, Inc.*, 518 F. Supp. 3d 764, 767-68 (S.D.N.Y. 2021) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." (citing *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000))).

New York courts have been less clear on when to commence the one-year limitations period for a cause of action that accrued during the tolling period, which ended on November 3, 2020 -- whether on November 3 or November 4, 2020.  The better view, and the one adopted by the Appellate Division, First Department, is that the statutes of limitations were tolled up to and including November 3, 2020, and "started to run again *after* November 3, 2020," i.e., on November 4, 2020.  *Murphy*, 2022 WL 16556686, at *2.  Thus, the limitations period for Plaintiff's claims "started to run" on November 4, 2020, and ended one year later, on November 4, 2021.  Other intermediate New York appellate courts have stated that limitations periods ran (or restarted) from November 3, 2020, but the statements in those cases were dicta because the one-day difference did not matter, and those cases are less persuasive than *Murphy*.  *See Roach*, 172 N.Y.S.3d at 218; *Brash*, 149 N.Y.S.3d at 585.  Plaintiff's claims are therefore timely.

### 3.  Defamation

The FAC's defamation claim is dismissed for failure to state a claim.  Under New York law, the elements of a defamation claim are "(1) a false statement that is (2) published to a third

party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *3P-733, LLC v. Tawan Davis*, 135 N.Y.S.3d 27, 30 (1st Dep't 2020).  Dixon argues that the defamation claim in the FAC should be dismissed both (1) for failure to plead what statements were made, when and to whom, and (2) because Dixon's statements are protected by a qualified privilege.  Dixon's motion is granted because, to the extent the FAC adequately alleges the statements at issue, those statements are protected by the common-interest privilege.

### a. Defamation Pleading Standard

Many of the allegedly defamatory statements in the FAC are insufficiently pleaded.  In federal court, a plaintiff "must 'identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published.'" *Nouinou v. Smith*, No. 20 Civ. 8682, 2021 WL 4340952, at *5 (S.D.N.Y. Sept. 22, 2021).  "[P]laintiff need not allege 'the <u>exact</u> time, place and speaker of each defamatory statement" as required under New York procedural law. *Wellner v. City of New York*, No. 16 Civ. 7032, 2019 WL 1511022, at *2 (S.D.N.Y. Mar. 22, 2019).  Those "'state procedural rules do not apply to federal courts sitting in diversity,' and federal courts instead apply the pleading standards set forth in Rule 8." *Nouinou*, 2021 WL 4340952, at *5; *see Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 n.10 (2d Cir. 2017) (citing *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).  "But the plaintiff must provide enough context for the defendants to defend themselves -- namely, 'an indication' of who made what statements, when, and to whom." *Wellner*, 2019 WL 1511022, at *2; *see Tannerite*, 864 F.3d at 251 & n.10 (noting the importance of fair notice in defamation suits).

With few exceptions, the FAC is too general to meet this federal standard.  The FAC
alleges that Dixon made various defamatory statements in an email to Plaintiff, and then makes
general allegations that Dixon forwarded the email to unspecified Amazon employees at
unspecified times.  Those allegations are too indefinite to give an "indication" of to whom and
when statements were made.  The allegations of the FAC that are more specific and potentially
sufficient under the lower federal standard are addressed below.

### b.  Defamation Qualified Privilege

To the extent the FAC sufficiently alleges when and to whom Dixon published
defamatory statements, those statements are protected by the qualified privilege for statements
"made by one person to another upon a subject in which both have an interest."  *Liberman v.
Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992) (internal quotation marks omitted); *accord Loughlin
v. de Bary*, Nos. 22-01948, 22-04110, 2023 WL 404004, at *1 (1st Dep't Jan. 26, 2023).  "This
'common interest' privilege has been applied, for example, to employees of an organization
. . . ."  *Liberman*, 605 N.E.2d at 349 (citation omitted); *accord Richards v. Sec. Res.*, 133
N.Y.S.3d 12, 14 (1st Dep't 2020).  The privilege applies if, "given the relation of the parties and
the surrounding circumstances, there is a reasonable ground for supposing an innocent motive for
giving the information, and to deprive the act of an appearance of officious intermeddling with
the affairs of others."  *Porges v. Weitz*, 165 N.Y.S.3d 584, 589 (2d Dep't 2022) (cleaned up)
(quoting *Lewis v. Chapman*, 16 N.Y. 369, 375 (1857)).  If the privilege applies, it can be
"defeated by alleging malice in the making of the statements."  *Keeling v. Salvo*, 131 N.Y.S.3d
885, 886 (1st Dep't 2020) (citing *Liberman*, 605 N.E.2d at 349).  The privilege can be vitiated by
"malice" either in the constitutional sense of knowledge of or recklessness as to falsity, or the

common-law sense of spite or ill will.  *Liberman*, 605 N.E.2d at 349-50; *accord Loughlin*, 2023

WL 404004, at *2.

Federal and state courts in New York are split on whether the qualified privilege is an

affirmative defense -- and thus not a basis for dismissal unless clear on the face of the complaint

-- or whether Plaintiff must plead facts showing the absence of a privilege.  *See Hillel v. Obvio*

*Health USA, Inc.*, No. 20 Civ. 4647, 2021 WL 229967, at *6, *9-10 (S.D.N.Y. Jan. 21, 2021),

*rev'd on other grounds sub nom. Hillel v. IQVIA, Inc.*, No. 21-666-cv, 2022 WL 905852 (2d Cir.

Mar. 29, 2022) (summary order); *Yukos Cap. S.A.R.L. v. Feldman*, No. 15 Civ. 4964, 2016 WL

4940200, at *7 & n.55 (S.D.N.Y. Sept. 14, 2016).  Even assuming the privilege is an affirmative

defense, a defamation claim must be dismissed if facts establishing the privilege appear on the

face of the complaint.  *See Front, Inc. v. Khalil*, 28 N.E.3d 15, 17 (N.Y. 2015) (applying

privilege to statements in a letter sent by an attorney reasonably in anticipation of litigation).

To the extent the FAC sufficiently alleges any defamatory statements, those statements

are privileged.  The FAC alleges that, between May 6 and May 15, 2020, Dixon published the

allegedly defamatory statements to "HR Regional Director Jennifer Hutt," Amazon or WFM

managers "Davie" Cumberland, "Fios," "Steve," "Rachel" and "Phil," and WFM employee

"Johanna."  However, the FAC alleges that the statements concerned a subject -- Plaintiff's

purportedly harassing behavior -- in which Dixon shared an interest with fellow managers, HR

professionals, and employees at the stores where Plaintiff worked.  *See, e.g.*, *Mancuso v. Allergy*

*Assocs. of Rochester*, 895 N.Y.S.2d 756, 758 (4th Dep't 2010) (applying qualified privilege to

statements that "were communicated to a limited number of people, all of whom were employees

of [defendant] who had worked with plaintiff and who had a legitimate interest in knowing that a

serious sanction had been imposed" (cleaned up)); *Richards*, 133 N.Y.S.3d at 14 (dismissing

statement made between co-employees about employer's conduct); *cf. Harpaz v. Dunn*, 162 N.Y.S.3d 732, 732-33 (1st Dep't 2022) (dismissing statement made between members of a condominium board about another member's conduct).  The statements are privileged even though Plaintiff was not employed by the same company as the WFM employees.  The FAC alleges that the recipients all either supervised or worked with Plaintiff, and any allegedly harassing behavior was of interest to employees of both companies.  *Cf., e.g.*, *Hammond v. Equinox Holdings LLC*, 148 N.Y.S.3d 34, 36 (1st Dep't 2021) (dismissing statement made between coworkers about customer's conduct).

The defamation claim based on these statements is dismissed because the FAC contains no non-conclusory allegations of malice.  *See Harpaz*, 162 N.Y.S.3d at 733 ("[T]he motion court correctly dismissed the action as foreclosed by defendant's qualified privilege, as plaintiff's allegations of malice on the part of defendant are conclusory.").  The FAC "makes no factual allegations to support her contention that defendant knew" the reports she repeated "were false, or that defendant recklessly disregarded the truth."  *Id.*; *cf., e.g.*, *Keeling*, 131 N.Y.S.3d at 886 (finding malice sufficiently pleaded based on "detailed factual allegations about" the defendant's access to information showing the statements to be false).  Nor does the FAC allege any factual basis for its conclusory accusations of spite or ill will.  *Loughlin*, 2023 WL 404004, at *2.

### 4.  Tortious Interference

The FAC alleges that Dixon tortiously interfered with Plaintiff's "work contract" with Amazon by getting Plaintiff fired by ordering Plaintiff not to show up for her work shifts.  This claim is dismissed for failure to state a claim.

"The elements of tortious interference are a valid contract between plaintiff and another, the defendant's knowledge of the contract and intentional procurement of its breach without

justification, and damages resulting therefrom." *Nostalgic Partners, LLC v. N.Y. Yankees P'ship*, 168 N.Y.S.3d 444, 447-48 (1st Dep't 2022). The FAC does not sufficiently allege a contract between Plaintiff and Amazon. The FAC states, in conclusory fashion, that Plaintiff had an employment contract, but "fails to plead the terms of the alleged underlying contract . . . and any specific breach thereof." *Bennett v. State Farm Fire & Cas. Co.*, 26 N.Y.S.3d 554, 555 (2d Dep't 2016); *see Lindberg v. Dow Jones & Co., Inc.*, No. 20 Civ. 8231, 2021 WL 3605621, at *11 (S.D.N.Y. Aug. 11, 2021). The FAC also does not allege any damages resulting from the end of her employment, because she had no contractual right to be employed any longer than she was. *Smalley v. Dreyfus Corp.*, 882 N.E.2d 882, 884 (N.Y. 2008) ("In that the length of employment is not a material term of at-will employment, a party cannot be injured merely by the termination of the contract . . . .").

A tortious interference claim by an at-will employee is better pleaded as tortious interference with prospective business relations. In general, "there can be no tortious interference with prospective at-will employment." *Petrisko v. Animal Med. Ctr.*, 135 N.Y.S.3d 2, 4 (1st Dep't 2020); *accord Pezhman v. Chanel, Inc.*, 2 N.Y.S.3d 792, 792 (1st Dep't 2015). Instead, "an agreement terminable at will is classified as a prospective contractual relation only, not an existing contract." *Petrisko*, 135 N.Y.S.3d at 4; *Pezhman*, 2 N.Y.S.3d at 792. This classification creates a limited exception to the general rule that "the employment-at-will doctrine 'cannot be circumvented by casting the cause of action in terms of tortious interference with employment.'" *Sullivan v. Harnisch*, 915 N.Y.S.2d 514, 520 (1st Dep't 2010), *aff'd*, 969 N.E.2d 758 (N.Y. 2012).

The elements of a claim for tortious interference with prospective economic relations are: "(1) that [Plaintiff] had a business relationship with a third party; (2) that the defendant knew of

that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party." *Stuart's, LLC v. Edelman*, 152 N.Y.S.3d 472, 476 (2d Dep't 2021).  An at-will employee can bring a tortious interference claim if the employee can otherwise satisfy the elements of tortious interference with prospective economic relations, by alleging that "the interference . . . was accomplished by wrongful means or [that] the offending party acted for the sole purpose of harming the other party." *Stuart's*, 152 N.Y.S.3d at 476; *see also Miller v. Livanis*, 137 N.Y.S.3d 15, 16 (1st Dep't 2020); *Pezhman*, 2 N.Y.S.3d at 792.

Even if Plaintiff's claim were construed as one for tortious interference with prospective business relations, that claim would be dismissed for failure to state a claim.  The FAC does not sufficiently allege tortious interference with prospective at-will employment.  As an initial matter, the FAC does not sufficiently allege that Dixon is outside of Plaintiff's employment relationship with Amazon, such that Amazon is a "third party."  The FAC does not allege that Dixon, as Plaintiff's supervisor, acted "outside of the scope of [her] employment" in directing Plaintiff not to come into work.  *Barcellos v. Robbins*, 858 N.Y.S.2d 658, 660 (2d Dep't 2008). While the FAC alleges that Dixon "had no authority or permission to terminate Plaintiff's employment based on . . . Dixon's Defamatory Statements," it does not allege that Dixon lacked the power in general to fire Plaintiff.

Even assuming Dixon interfered with a third-party relationship between Plaintiff and Amazon, the FAC does not allege that Dixon used "wrongful means" to accomplish the firing. "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion

14

alone although it is knowingly directed at interference" with prospective contractual relations. *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 157 (2d Dep't 2020) (quoting *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980)).  The FAC alleges that Dixon told Plaintiff not to come to work -- not that she threatened her, pressured her economically or misled her about the consequences.  Nor does the FAC allege facts that plausibly show that Dixon instructed Plaintiff not to come to work "for the sole purpose of harming" Plaintiff, even drawing all reasonable inferences in favor of Plaintiff as the non-moving party.

### 5.   Intentional Infliction of Emotional Distress

The IIED claim is dismissed because the FAC fails to allege "extreme and outrageous conduct" sufficient to sustain this cause of action.  *Biehner v. City of New York*, 19 Civ. 9646, 2021 WL 878476, at *9 (S.D.N.Y. Mar. 9, 2021) (internal quotation marks omitted).  "Extreme and outrageous conduct" is a very high bar.  The New York Court of Appeals observed that, "of the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous."  *Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016) (internal quotation marks omitted).  This standard is not met by one allegedly false email vaguely accusing Plaintiff of using racist language, or even by getting Plaintiff fired.  *See, e.g., Drimer v. Zionist Org. of Am.*, 150 N.Y.S.3d 48, 50 (1st Dep't 2021) ("Here, although plaintiff alleges in a conclusory fashion that defendants engaged in a pattern of harassment that caused him to suffer from anxiety and stress that eventually led to a serious cardiac event, the allegations of abusive conduct directed at plaintiff in the context of his employment do not rise to the level of outrageousness required to state a claim."); *Suarez v. Bakalchuk*, 887 N.Y.S.2d 6, 7 (1st Dep't 2009) ("The conduct challenged here, while extremely

offensive and bizarre, does not satisfy the requirement of outrageous conduct . . . ."); *Kaye v. Trump*, 873 N.Y.S.2d 5, 6 (1st Dep't 2009) ("Plaintiff alleges that defendants variously made rude remarks to and about her, commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest. This conduct, while not to be condoned, is not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'").

### 6. Negligent Infliction of Emotional Distress

The NIED claim is dismissed for failure to allege breach of a duty of care. *See Xenias v. Roosevelt Hosp.*, 120 N.Y.S.3d 298, 299 (1st Dep't 2020) ("The claim was properly dismissed since the allegations do not set forth the breach of a duty of care owed to plaintiff . . . ."). An NIED claim, like other kinds of negligence claims, must be premised on breach of "a duty which could furnish a basis for tort liability." *Derago v. Ko*, 134 N.Y.S.3d 801, 802 (2d Dep't 2020) (internal quotation marks omitted); *see generally Sheila C. v. Povich*, 781 N.Y.S.2d 342, 347 (1st Dep't 2004) ("The threshold question in any negligence action is whether the alleged tortfeasor owes a duty of care to the injured party . . . ."). Beyond stating in conclusory terms that Dixon acted negligently, "no allegations of negligence appear in the pleadings." *Chiesa v. McGregor*, 176 N.Y.S.3d 687, 691 (2d Dep't 2022).[1]

---

[1] The NIED claim might also be dismissed for failure to allege "extreme and outrageous conduct" as with the IIED claim. The New York intermediate appellate courts are split on this issue. *Compare Hammond v. Equinox Holdings LLC*, 148 N.Y.S.3d 34, 37 (1st Dep't 2021) (extreme and outrageous conduct still an element of NIED), *with Taggart v. Costabile*, 14 N.Y.S.3d 388, 398 (2d Dep't 2015) (extreme and outrageous conduct not an element of NIED). The Court of Appeals has suggested that "[c]ontemporaneous or consequential physical harm" could substitute for "extreme outrage and moral blame." *Johnson v. State*, 334 N.E.2d 590, 591-

B.      **Plaintiff's Motion for Leave to File the PSAC**

1.   **Legal Standard for Leave to Amend**

"[C]ourts should 'freely give' leave to amend 'when justice so requires'" but district

courts have "considerable discretion to deny amendment" if one of several reasons is present,

including "futility of amendment." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015)

(internal quotation marks omitted); *accord Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,

970 F.3d 133, 147 n.4 (2d Cir. 2020).  "Futility is a determination, as a matter of law, that

proposed amendments would fail to cure prior deficiencies or to state a claim under Rule

12(b)(6) of the Federal Rules of Civil Procedure."  *Olson v. Major League Baseball*, 29 F.4th 59,

72 (2d Cir. 2022) (internal quotation marks omitted).

2.   **Time-Barred Claims: Defamation, IIED, NYLL § 740 and Title VII**

In the PSAC, Plaintiff seeks to add claims for defamation and IIED against Defendants

other than Dixon (the "New Defendants"), and to add claims for discrimination and retaliation

under Title VII and retaliation under NYLL § 740.  It would be futile to allow the filing of the

PSAC to assert these claims because they do not "relate back" to when the original complaint or

the FAC were filed, and they are all time-barred under their respective one-year statutes of

limitations.

> Rule 15(c)(1)(C) allows for an amended pleading to relate back to the date of the
> original pleading if four conditions are met: "(1) the claim must have arisen out of
> conduct set out in the original pleading; (2) the party to be brought in must have
> received such notice that it will not be prejudiced in maintaining its defense; (3)
> that party should have known that, *but for a mistake of identity*, the original action
> would have been brought against it; and (4) the second and third criteria are
> fulfilled within the period provided by Rule 4(m) for serving the summons and
> complaint, and the original complaint was filed within the limitations period.

92 (N.Y. 1975); *see Ornstein v. N.Y.C. Health & Hosps. Corp.*, 881 N.E.2d 1187, 1189 (N.Y.
2008).  The FAC does not plead extreme and outrageous conduct or physical harm.

*Ceara v. Deacon*, 916 F.3d 208, 211 (2d Cir. 2019) (emphasis added) (cleaned up) (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)).  "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities," and "'John Doe' pleadings cannot be used to circumvent statutes of limitations."  *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468, 470 (2d Cir. 1995); *accord Ceara*, 916 F.3d at 213 (holding that "*Krupski* [*v. Costa Crociere S. p. A.*, 560 U.S. 538, 546 (2010)] did not abrogate *Barrow*, which remains the law of this Circuit").  The Complaint and the FAC name Dixon as the sole defendant and challenge only her conduct.  The addition of the New Defendants in the PSAC does not relate back.

Plaintiff's defamation, IIED and NYLL § 740 claims against the New Defendants are therefore untimely.  All three claims have a one-year statute of limitations.  *See Smulyan v. N.Y. Liquidation Bureau*, 71 N.Y.S.3d 412, 413 (1st Dep't 2018) (citing CPLR § 215(3)) (one-year statute of limitations for defamation); *Winslow v. New York-Presbyterian/Weill-Cornell Med. Ctr.*, 161 N.Y.S.3d 775, 776 (1st Dep't 2022) (same for IIED); NYLL § 740(4) (2021), *amended by* 2021 N.Y. Sess. Laws ch. 522.[2]  The latest of any challenged conduct occurred in May 2020.

---

[2] The amendment to § 740 in 2021, effective January 26, 2022, to extend the statute of limitations from one year to two years, does not apply.  Assuming the statute of limitations on Plaintiff's claims started running on November 4, 2020, the one-year statute of limitations had expired on November 4, 2021, before the longer statute of limitations became effective.  Under New York law, any statute that would impact substantive rights, such as by imposing new liability on past conduct, triggers a "presumption against retroactivity."  *Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 989-91 (N.Y. 2020).  "If retroactive application would not only impose new liability on past conduct but also revive claims that were time-barred at the time of the new legislation, we require an even clearer expression of legislative intent than that needed to effect other retroactive statutes -- the statute's text must unequivocally convey the aim of reviving claims."  *Id.* at 992.  There is no indication in the text of § 740 that New York's legislature intended to revive time-barred claims.

The statute of limitations started running on November 4, 2020, at the conclusion of the statutory tolling period discussed above, and ended on November 4, 2021.

Any Title VII claim against the New Defendants is also barred because it will have been filed more than 90 days after Plaintiff received the EEOC right-to-sue letter on October 12, 2021. *See Garnes v. ABM Janitorial Servs., Inc.*, No. 22 Civ. 2078, 2022 WL 1156154, at *2 (S.D.N.Y. Apr. 18, 2022) ("[A] Title VII action must be commenced within 90 days of receiving the Notice of Right to Sue . . . ."). Even if such a claim were deemed filed April 20, 2022, when Plaintiff first stated her desire to file a second amended complaint, the claim would be untimely.

It is unnecessary to consider whether Plaintiff's Title VII and § 740 claims against Dixon relate back to the filing of Plaintiff's original complaint, because Dixon is not subject to liability under either statute. *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) ("[I]ndividuals are not subject to liability under Title VII." (internal quotation marks omitted)); *accord Accely v. Consol. Edison Co. of N.Y.*, No. 19 Civ. 5984, 2022 WL 973415, at *5 (S.D.N.Y. Mar. 31, 2022); *see also Ulysse v. AAR Aircraft Component Servs.*, 10 N.Y.S.3d 309, 310 (2d Dep't 2015) (holding that an individual supervisor is not an "employer" subject to liability under NYLL § 740). Therefore, Plaintiff's proposed addition of Title VII and § 740 claims against Dixon also would be futile.

### 3.  Tortious Interference

The PSAC includes a claim for tortious interference with contract against New Defendants WFM, Cumberland, and Steve, Phil, Ebrima and Johanna Doe, as well as Defendant Dixon. If the tortious interference claim in the PSAC is construed as a claims for tortious interference with contract, the claim is futile for the same reasons as in the FAC. The PSAC does not contain any non-conclusory allegation that a contract existed, or any allegations about

its material terms, including whether Plaintiff was an at-will employee.  If the PSAC is construed as pleading tortious interference with prospective contractual relations, that claim is futile for the same reason it would be futile to assert this claim against Dixon.  Even assuming all of the Defendants are properly considered third parties to Plaintiff's employment with Amazon, the PSAC does not allege that any of them procured Plaintiff's firing by wrongful means or for the sole purpose of harming Plaintiff.

As discussed above, "wrongful means" means "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure," but it generally only encompasses conduct that is itself "criminal or tortious." *Stuart's, LLC*, 152 N.Y.S.3d at 476 (internal quotation marks omitted).  A defendant acts solely out of malice only if he was not motivated by "self-interest or other economic considerations." *Bradbury v. Israel*, 168 N.Y.S.3d 16, 18-19 (1st Dep't 2022).

The PSAC's tortious interference claim arises from Dixon telling Plaintiff not to come to work.  The claim against Dixon fails because, while the PSAC alleges that Dixon acted with the intent to get Plaintiff fired, neither the FAC nor the PSAC alleges that Dixon used wrongful means to achieve that end -- such as fraud, misrepresentation or threats -- or did so for the sole purpose of harming Plaintiff.  *See Miller*, 137 N.Y.S.3d at 16; *Pezhman*, 2 N.Y.S.3d at 792.  The PSAC could be read to allege that other Defendants misrepresented Plaintiff's behavior to Dixon, but the claim fails against them because the PSAC does not allege facts to support the plausible inference that any of those Defendants intended to or did cause Plaintiff's firing.

The PSAC comes closest to alleging tortious interference on the part of Cumberland. The PSAC alleges that Plaintiff complained to Cumberland about perceived discrimination and harassment by other Amazon and WFM employees, and that Cumberland responded by

threatening to email her manager -- Dixon -- to send Plaintiff home.  The PSAC alleges that, in

an email to Dixon, Cumberland made false statements about Plaintiff having purportedly called

Amazon and WFM employees racist.  The PSAC alleges that Dixon incorporated the defamatory

statements made by Cumberland into the email Dixon sent to Plaintiff.  Even assuming

Cumberland made misrepresentations about Plaintiff that constitute "wrongful means" or that

Cumberland's sole motive was to harm Plaintiff, the PSAC does not allege that Cumberland did

anything that caused Plaintiff's firing.  The PSAC does not allege that Cumberland's email

caused Dixon to tell Plaintiff not to come to work, since the PSAC affirmatively alleges that

Dixon knew Cumberland's accusations were false.  The PSAC's allegation that Dixon and

Cumberland worked "in complicity" is otherwise conclusory.

The PSAC contains no non-conclusory allegations about any other New Defendant's

involvement in Plaintiff's firing.  The PSAC alleges that Steve and Phil Doe "conspir[ed]" with

Cumberland but provides no factual basis for that claim.  The PSAC contains no allegations

whatsoever about Ebrima or Johanna Doe playing any role in Plaintiff's firing.  The PSAC

contains no allegations that WFM itself played any role in Plaintiff's firing.  Even if WFM might

be vicariously liable for the acts of any of its employees, the PSAC's tortious interference claim

against those WFM employees fail for the reasons above.

### 4.  NIED, Negligent Hiring and Negligent Supervision

The PSAC asserts several negligence claims, including NIED against all putative

Defendants and negligent hiring and supervision against Amazon and WFM.  The NIED claim in

the PSAC fails, including against the New Defendants, for the same reason as that in the FAC.

The PSAC does not allege what duty any Defendant owed to Plaintiff or what duty allegedly was

breached.  *See Xenias*, 120 N.Y.S.3d at 299 (affirming dismissal of NIED claim where complaint

failed to allege breach of a duty of care owed to plaintiff).  The negligent hiring and negligent supervision claims fail because, to the extent the PSAC specifies what conduct by any Amazon or WFM employee caused Plaintiff's injury, the PSAC does not allege that the employers knew or should have known of the employees' propensity for that conduct.  *Waterbury v. N.Y.C. Ballet, Inc.*, 168 N.Y.S.3d 417, 423 (1st Dep't 2022) ("A cause of action for negligent hiring and retention requires allegations that an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure caused damage to others.").

### 5.   NYSHRL, NYCHRL and Section 1981 Discrimination

The PSAC asserts, against all Defendants, race, gender and disability discrimination claims under the NYSHRL and NYCHRL, and race discrimination claims under § 1981.  Unlike the Title VII claims, these discrimination claims are not time barred.  These claims are futile, however, because the PSAC does not sufficiently allege that Plaintiff was fired under circumstances giving rise to an inference of discrimination, that she was treated less well because of a protected characteristic, or that she was denied a reasonable accommodation for a disability.

In all respects that are relevant here, § 1981 claims are subject to the same "substantive standards" as Title VII.  *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *accord Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20 Civ. 10923, 2022 WL 845770, at *8 (S.D.N.Y. Mar. 22, 2022).  As discussed in more detail below, the NYCHRL has long been subject to less stringent standards than the federal employment discrimination laws, and since the NYSHRL was amended in 2019, "the standard for [NYSHRL] claims is closer to the standard under the NYCHRL."  *Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).  Because the PSAC fails to state a claim under the NYSHRL and NYCHRL, the PSAC fails to state a claim under § 1981 *a fortiori*.

22

### a. Unlawful Termination

Section 1981 employment discrimination claims, like Title VII claims, "are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Ramirez v. Temin & Co., Inc.*, No. 20 Civ. 6258, 2021 WL 4392303, at *5 (S.D.N.Y. Sept. 24, 2021) (parallel citations omitted) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). Plaintiff bears the burden of establishing a *prima facie* case of discrimination, which requires allegations "that (1) she belonged to a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Id.* Unlike Title VII and the state and city laws, § 1981 prohibits only discrimination on the basis of race. *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000); *accord Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, No. 211642-cv, 2022 WL 710896, at *3 (2d Cir. Mar. 10, 2022) (summary order).[3]

"Under the NYCHRL," and the NYSHRL as amended, Plaintiff need allege only that she "was subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic." *Ayers v. Bloomberg, L.P.*, 165 N.Y.S.3d 554, 557 (2d Dep't 2022). To the extent Plaintiff's discrimination claims rest on alleged discrimination in her firing, the PSAC contains no allegations to support that charge. As discussed below, some of Defendants' actions around Plaintiff's firing may be interpreted as retaliatory, but the PSAC does not allege any facts suggesting that Plaintiff was fired because of her race, gender or disability.

---

[3] While the elements of a § 1981 claim are often stated to require that plaintiffs be members of a racial minority, "the Supreme Court has held that § 1981 also applies 'to racial discrimination against white persons.'" *Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976)). The first element is thus no barrier to Plaintiff's claims.

####   b.  Hostile Work Environment

To plead the elements of a federal claim for hostile work environment, a claim must allege "conduct (1) that is objectively severe or pervasive, that is, conduct that creates an environment that a reasonable person would find hostile or abusive, (2) that the plaintiff subjectively perceives as hostile or abusive, and (3) that creates such an environment because of plaintiff's membership in a protected class." *Tassy v. Buttigieg*, 51 F.4th 521, 533 (2d Cir. 2022) (cleaned up). "[A] plaintiff must allege that the harassment she experienced was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment," and that she experienced those conditions because of her race. *Ramirez*, 2021 WL 4392303, at *7-8 (cleaned up) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

The NYCHRL and amended NYSHRL are less demanding and require only that a plaintiff allege she was treated "less well" on the basis of a protected characteristic. *See Emamian v. Rockefeller Univ.*, 971 F.3d 380, 390 (2d Cir. 2020) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *accord Hamburg v. N.Y. Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 33 (1st Dep't 2017). "Under this standard, the conduct's severity and pervasiveness are relevant only to the issue of damages." *Mihalik*, 715 F.3d at 110; *accord Aiken v. MTA N.Y.C. Transit*, No. 18 Civ. 11756, 2021 WL 6621579, at *13 (S.D.N.Y. Sept. 2, 2021). Nevertheless, a plaintiff must show that "the conduct is caused by a discriminatory motive" and she was "treated less well at least in part because of" a protected characteristic. *Emamian*, 971 F.3d at 390 (quoting *Mihalik*, 715 F.3d at 110); *accord Brown v. Montefiore Med. Ctr.*, No. 19 Civ. 11474, 2021 WL 1163797, at *8 (S.D.N.Y. Mar. 25, 2021). The alleged differential treatment also must "rise above the level of nonactionable petty slights

or inconveniences." *O'Rourke v. Nat'l Foreign Trade Council, Inc.*, 110 N.Y.S.3d 104, 105 (1st Dep't 2019).

The PSAC alleges that Plaintiff's coworkers sometimes were hostile toward her and made it more difficult to do her job.  The PSAC does not, however, allege circumstances giving rise to an inference of discrimination with respect to anything other than "petty slights or inconveniences."  The PSAC contains no non-conclusory allegations of gender bias, and the allegations concerning race and disability discrimination are also insufficient.

The PSAC's allegations to support an inference of race discrimination are almost exclusively that Plaintiff is white and that she had negative interactions with coworkers who are not white.  The fact that most of Plaintiff's coworkers were of a different race, and that they did not get along, does not give rise to an inference of race discrimination.  *See, e.g.*, *Milledge v. City of Hartford*, No. 3:19 Civ. 1104, 2020 WL 3510813, at *3 (D. Conn. June 29, 2020) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races . . . ." (internal quotation marks omitted)); *Thompson v. New York City*, No. 12 Civ. 8034, 2013 WL 6409326, at *10 (S.D.N.Y. Dec. 9, 2013) (collecting cases); *cf. Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (affirming dismissal where plaintiff "offered no reason to suspect" racial bias "other than his assertion that" decision-makers were of a different race).  The PSAC alleges one incident in which a coworker allegedly spoke to Plaintiff in Gaelic, apparently making assumptions about Plaintiff's ethnic background.  At most, such a comment is a "nonactionable petty slight."  *See Mullins v. Consol. Edison Co. of N.Y.*, No. 13 Civ. 6800, 2015 WL 4503648, at *13 (S.D.N.Y. July 22, 2015) (holding that "isolated observation that Plaintiff speaks well" and "sporadic race-based teasing" were insufficient to make out an NYCHRL discrimination claim).  Plaintiff's other allegations that other Amazon and WFM employees treated her a

particular way because of her race, and that employees of other races were not treated the same way, are conclusory and insufficient to state a claim.

The PSAC also does not state a claim for disability discrimination under the NYSHRL or the NYCHRL.  The PSAC alleges that Plaintiff had open-heart surgery, and as a result was particularly fearful of COVID-19 and diligent about safety protocols.  Even if these circumstances amount to a "physical impairment" under state and local law, the PSAC fails to allege any facts giving rise to an inference of discrimination on that basis.  *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 11 N.E.3d 159, 166 (N.Y. 2014).  The PSAC alleges that, on several occasions, people asked Plaintiff to speak louder or indicated they could not hear her because she wore two masks and a face shield.  The PSAC does not allege, however, that those people were insincere or mocking Plaintiff in doing so.  The PSAC alleges that many of Plaintiff's coworkers mocked Plaintiff and others for wearing PPE and adhering to COVID-19 safety protocols, not that anybody mocked Plaintiff *because of* her physical impairment.

### c.  Failure to Provide a Reasonable Accommodation

Plaintiff's NYSHRL and NYCHRL disability discrimination claims include allegations that Defendants failed to provide her a reasonable accommodation for her alleged disability.  The NYCHRL requires employers "to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job."  N.Y.C. Admin. Code § 8-107(15)(a).  The NYSHRL also requires reasonable accommodations, meaning "actions taken which permit an employee . . . to perform in a reasonable manner the activities involved in the job or occupation."  N.Y. Exec. Law § 292(21-e).  The reasonable accommodation claims in the PSAC fail for lack of any allegation that a reasonable accommodation would "enable" or "permit" Plaintiff to perform her job duties.  Rather, the PSAC alleges that, by diligently wearing face coverings, Plaintiff was

already able and permitted reasonably to perform all essential job functions with no

accommodation, until she was fired for unrelated reasons.

### 6.  NYSHRL, NYCHRL and Section 1981 Retaliation

Plaintiff asserts claims for retaliation under the NYSHRL, NYCHRL and § 1981 against

all Defendants.  The § 1981 retaliation claim would be futile because Plaintiff has not alleged

that she opposed a practice prohibited by the federal employment discrimination laws.  The

NYSHRL and NYCHRL claims would not be futile, however, against some Defendants, under

the more liberal standards applicable to retaliation claims under state and local law, and may be

pleaded in a second amended complaint.

### a.  Legal Standards

"To survive a motion to dismiss on a Section 1981 retaliation claim," Plaintiff must

allege "[i] participation in a protected activity; [ii] that the defendant knew of the protected

activity; [iii] an adverse employment action; and [iv] a causal connection between the protected

activity and the adverse employment action."  *Cadet v. Alliance Nursing Staffing of N.Y., Inc.*,

No. 21 Civ. 3994, 2022 WL 4584246, at *10 (S.D.N.Y. Sept. 29, 2022) (internal quotation marks

omitted) (quoting *Littlejohn*, 795 F.3d at 315-16).  "A plaintiff may prevail on a claim for

retaliation even when the underlying conduct complained of was not in fact unlawful so long as

she can establish that she possessed a good faith, reasonable belief that the underlying challenged

actions of the employer violated the law."  *Id.* at *11 (cleaned up).

However, "[n]ot every act by an employee in opposition to discrimination is protected.

The opposition must be directed at an unlawful employment practice of an employer."  *Small v.

City of New York*, No. 21 Civ. 1527, 2022 WL 376030, at *8 (S.D.N.Y. Feb. 7, 2022) (cleaned

up) (quoting *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999); *see*

*McMenemy v. City of Rochester*, 241 F.3d 279, 282-85 (2d Cir. 2001) (permitting retaliation claim against plaintiff's employer where plaintiff opposed a different employer's unlawful employment practices). *See generally Cadet*, 2022 WL 4584246, at *10 ("[R]etaliation claims are analyzed in the same manner and under the same tests under both Title VII and Section 1981." (citing *Littlejohn*, 795 F.3d at 312, 315-16, 320-21)). "[O]pposing discrimination by co-employees against non-employees is not directed at an unlawful employment practice, and does not constitute protected activity under either Title VII or Section 1981." *Butler v. City Sch. Dist. of New Rochelle*, No. 19 Civ. 7395, 2020 WL 6639121, at *2 (S.D.N.Y. Nov. 12, 2020) (citing *Wimmer*, 176 F.3d at 134-35).

The elements of retaliation under state and city law are similar to those under federal law, with two principal exceptions. Plaintiff must allege that she "participated in a protected activity known to [Defendants], that [Defendants] took an action that 'disadvantaged' [her], and that a causal connection exists between the protected activity and the adverse action." *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 736 (S.D.N.Y. 2022) (citing *Cadet-Legros v. N.Y. Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, 230 (1st Dep't 2015)). Plaintiff need not allege an adverse employment action that necessarily would be actionable under federal law, only something "that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020). The scope of "protected activity" is also broader under state and local law. Retaliation claims can survive under those laws based on retaliation for complaints about discrimination by a non-employer and outside of the employment context. N.Y. Exec. Law § 296(7) (prohibiting retaliation by *any person*, not just employers, for opposing discriminatory conduct in a wide range of contexts besides employment, such as public accommodations); N.Y.C. Admin. Code § 8-107(7) (same).

### b. Plaintiff's Protected Activity

The PSAC alleges that Plaintiff engaged in protected activity on April 26 and May 1, 2020.  First, on April 26, 2020, after what she perceived as hostile interactions with several WFM employees, Plaintiff complained to Cumberland about perceived race discrimination and failure to comply with COVID safety protocols by WFM employees.  Second, after her interaction with Cumberland, Plaintiff repeated her complaint to an Amazon telephone reporting hotline and further complained about what she perceived as hostility from Cumberland, a WFM manager.  Third, on May 1, 2020, after a WFM employee reacted violently to a request from Plaintiff, she complained to another WFM manager and an Amazon manager, again about both racial discrimination and COVID protocol violations.

Plaintiff alleges that no one from WFM or Amazon ever followed up about any of her complaints.  Shortly thereafter, Dixon told Plaintiff not to come into work, citing Cumberland's accusations that Plaintiff had called WFM employees racist.  After Plaintiff stopped coming to work following that email, she ultimately was fired.  The PSAC repeatedly alleges that WFM was *not* Plaintiff's employer and that WFM employees, such as Cumberland, were *not* her coworkers.

### c. Viability of Retaliation Claims Based on Plaintiff's Activity

Plaintiff's proposed § 1981 retaliation claim would be futile because the PSAC does not allege that Plaintiff opposed "an unlawful employment practice."  Rather, the PSAC alleges that she complained about being mistreated by people who were *not* her coworkers or supervisors. WFM employees' alleged practice of mistreating Amazon employees who came to their stores is not an employment practice.  Even if Plaintiff's employer retaliated against her for opposing

WFM's bad practices, that retaliation would not be actionable under the federal employment discrimination laws.  *See Butler*, 2020 WL 6639121, at *2 (citing *Wimmer*, 176 F.3d at 134-35).

Plaintiff's proposed NYSHRL and NYCHRL claims, on the other hand, would not be futile against all Defendants because those statutes cover more "protected activity."  WFM's unlawful practices that Plaintiff opposed are akin to a defendant's mistreatment of any non-employee on the basis of race.  The NYSHRL and NYCHRL protect individuals from retaliation by any person in response to opposing discrimination in a wide array of contexts beyond employment, such as public accommodations.  N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7).  While the PSAC does not sufficiently allege discrimination on the basis of race or disability, as discussed above, a plaintiff need not allege independently actionable acts of discrimination to plead a viable retaliation claim.  It is sufficient that the PSAC alleges that Plaintiff reasonably and in good faith believed that WFM employees were discriminating against her because of her race.  *See, e.g.*, *La Porta v. Alacra, Inc.*, 38 N.Y.S.3d 20, 22 (1st Dep't 2016) ("A plaintiff need not establish an underlying HRL violation in order to prevail on a retaliation claim, and, based on her allegations, it can be readily inferred that she had a good faith, reasonable belief that the underlying challenged actions violated the law." (cleaned up)).

### d.  Liability of Particular Defendants

The PSAC's retaliation claims may be pleaded against some Defendants, but are futile as to others.  Under the NYSHRL, "an individual who has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others" is liable as a principal, but under the "aiding and abetting provision, personal liability may be imposed on an individual who does not have such authority, but who also actually participates in the conduct giving rise to the discrimination."  *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL

1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (cleaned up) (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of [a protected characteristic] . . . to discriminate against such person in . . . terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). This creates principal liability for individual defendants who "participate[] in the conduct giving rise to the discrimination claim." *See Feingold*, 366 F.3d at 158 (internal quotation marks omitted); *accord Deveaux*, 2020 WL 1812741, at *5. Separately, the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

The NYCHRL also explicitly provides for vicarious liability of employers based on the acts of employees who "exercised managerial or supervisory responsibility." N.Y.C. Admin. Code § 8-107(13). Under the NYSHRL, employers are not liable unless they aid and abet the discrimination. *See Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1011 (N.Y. 2004) ("[A]n employer cannot be held liable under state law for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." (cleaned up)); *accord Reynolds v. State*, 119 N.Y.S.3d 266, 269-70 (3d Dep't 2020); *Friederick v. Passfeed, Inc.*, No. 21 Civ. 2066, 2022 WL 992798, at *8 (S.D.N.Y. Mar. 31, 2022).

The retaliation claims are not futile against Dixon or Cumberland, who allegedly directly participated in getting Plaintiff fired because of her complaints. The NYCHRL claim also is not futile against Amazon, Prime Now LLC and WFM, because those employers could be vicariously liable for the acts of their managers and supervisors, Dixon and Cumberland.

The NYSHRL claim is futile against the employer Defendants, however, because PSAC contains no allegations that provide a basis for imputing encouragement, condonation or approval of Dixon or Cumberland's acts to their employers.  And the retaliation claims against the other Defendants are futile, because the PSAC contains no non-conclusory allegations that the other Defendants played any role in getting Plaintiff fired or engaged in any other retaliatory conduct.

### 7.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's proposed claim of breach of the implied covenant of good faith and fair dealing would be futile.  "The implied covenant of good faith and fair dealing between parties to a contract embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Moran v. Erk*, 901 N.E.2d 187, 190 (N.Y. 2008); *accord Rad & D'Aprile, Inc. v. Arnell Constr. Corp.*, 164 N.Y.S.3d 653, 655-56 (2d Dep't 2022).  The PSAC alleges that Plaintiff's employment created an implied duty to refrain and/or protect her from harassment, discrimination and retaliation, which was breached as described above.  Again, while the PSAC asserts that Plaintiff had an employment contract with Amazon and Prime Now, it does not allege any terms of that supposed contract.  The most that can be inferred from the fact that Plaintiff went to work is that she had an at-will employment agreement.  The PSAC affirmatively alleges that Plaintiff did not have an employment relationship with WFM and does not suggest that Plaintiff had a contract with any Individual Defendant.  The implied covenant claim therefore would be futile as to each Defendant either because the PSAC does not allege the existence of a contract, the PSAC does not allege a duty that could be implied in any contract that is alleged and/or the PSAC does not allege breach of any duty that is allegedly implied.

First, the Defendants that are not parties to any alleged contract cannot be liable for breach of a duty purportedly implied in that contract. *Cf. Clervil v. Bellevue*, 909 N.Y.S.2d 524, 526 (2d Dep't 2010) (affirming summary judgment on implied covenant claim because "plaintiff failed to raise a triable issue of fact as to whether the defendants were a party to the contract alleged to have been breached"); *accord Fischkoff v. Iovance Biotherapeutics, Inc.*, No. 17 Civ. 5041, 2018 WL 4574890, at *7 (S.D.N.Y. July 5, 2018); *see also Parlux Fragrances, LLC v. S. Carter Enters., LLC*, 164 N.Y.S.3d 108, 123 (1st Dep't 2022) ("[A] breach of the covenant of good faith and fair dealing is a breach of the contract itself."). The implied covenant claim would therefore be futile against WFM and all of the Individual Defendants.

Second, even assuming the PSAC sufficiently alleges that Plaintiff had at least an at-will employment arrangement with Amazon and Prime Now LLC, an at-will employment contract cannot contain an implied covenant not to fire Plaintiff. *See Barber v. Deutsche Bank Sec., Inc.*, 961 N.Y.S.2d 39, 41 (1st Dep't 2013); *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983), *superseded by statute on other grounds*, NYLL § 740, *as recognized in Leibowitz v. Bank Leumi Tr. Co. of N.Y.*, 548 N.Y.S.2d 513 (2d Dep't 1989). Thus, the implied covenant claim would be futile against all Defendants to the extent the retaliation and discrimination to which the PSAC refers are Plaintiff's firing.

Third, assuming that even an at-will employment contract contains an implied promise not to create a hostile work environment, making it difficult or impossible for Plaintiff to remain employed, the PSAC does not sufficiently allege a breach of that duty, as discussed above.

## III.   CONCLUSION

For the foregoing reasons, Dixon's motion to dismiss is GRANTED, Plaintiff's motion for leave to amend is GRANTED in part and DENIED in part. By March 2, 2023, Plaintiff may

file a revised version of the PSAC asserting retaliation claims under the NYSHRL and NYCHRL against Dixon and Cumberland, and under the NYCHRL against Amazon, Prime Now LLC and WFM.  If Plaintiff can, in good faith, allege a factual basis for her tortious interference claim that cures the deficiencies identified above -- either pleading that any Defendant used "wrongful means," as defined above, or a factual basis for the assertions about Defendants' states of mind -- Plaintiff may replead a revised version of the tortious interference claim in the PSAC.  Plaintiff is not granted leave to replead any of her other claims, which she has already had several opportunities to plead sufficiently and for which the PSAC provided no factual basis.

Plaintiff is advised that, because her proposed federal claims are futile, if she elects to replead state-law claims and include Defendants who are citizens of the same state(s) of which Plaintiff is a citizen, the Court will have discretion to remand the case to state court.

The Clerk of Court is respectfully directed to close the motion at Docket Number 37 and close the case.

Dated: February 16, 2022
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**